McIlvaine, C. J.
The principal questions involved in these cases being common to both, they are considered together.
1. We will first dispose of the objections made to the ■corporate existence of the Ohio Building and Savings Association. The certificate of its incorporation was acknowledged before a notary public, and not before a justice ■of the peace, as the statute required. Whether this association has availed itself of subsequent legislation (69 Ohio L. 60) to cure this irregularity or defect, we are not advised. It does appear, however, that the Association was attempted, in good faith, to be organized as a corporation under the act of February 21, 1867 (64 Ohio L. 18), and that, in like good faith, it commenced and has carried on business as a building corporation ; and as such the plaint *201 iffs in error have dealt with it. "We think, therefore, that they are estopped from denying, in this collateral way, the validity of the certificate. 22 Ohio St. 339.
2. The fact, that a member of such association is permitted to hold in his own right a number of shares greater than the maximum prescribed by the by-laws of the company, but not in excess of the number limited by the statute (act of May 9, 1868, sec. 2), is not a matter of defense, by such member or his guarantors, against any claim which the company may have on account of such shares, whether the claim be for stated dues, interest on loans advanced, or ■fines assessed under the by-laws. What would be the effect, if the number exceeded the statutory limit, we do not consider; but it is clear, that if the association waive the rule of its by-law in this regard, the member violating it has no right to complain; nor has any other person standing in the relation of surety for him, any cause of complaint.
3. There was no error in refusing to hear testimony as to the custom of the association to advance loans to its members, without inquiry as to the use to which the borrowers intended to apply the money. Such testimony was immaterial. These associations are not bound to supervise the application of loans made by them. The statute (sec. 1 of the act of May 9, 1868) contemplates the loan of money by such association among its members and depositors, to be used “ in buying lots or houses, or in building or repairing houses, or other purposes.” The borrower may use the money for the payment of debts generally, or in his general business, or for any other lawful purpose. There is no duty imposed upon building associations to inquire as to the iutended use of the loan; therefore, its custom in this regard is of no significance.
4. As to the power of building corporations to impose fines. Such power is conferred by section 2 of the act of May 9, 1868, which provides: “Such corporation shall be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by *202 members or depositors for the right of precedence in taking loans, as the corporation by its by-laws may adopt. By the terms of this statute, fines may be assessed and collected only from members of the corporation; but there is no limitation as to the amount or the occasion, except as prescribed in the by-laws adopted by the corporation, -and there is no express limitation on the power of the corporation to adopt by-laws. It is to be regretted that the legislature was not more specific in making the grant of power thus intended to be conferred. It is no wondei’, from the very general terms of the grant, that the courts of the state have been at sea, in their efforts to ascertain and define this power. That there are limits, however, beyond which the corporation, by its by-laws, can not go, is undoubted. 1. The amount of the fine must be reasonable. 2. It can be imposed only by way of punishment for some delinquency in the performance of a duty which the member may owe to the corporation by reason of his membership. 3. It is unreasonable, and therefore we assume that the legislature did not intend, that more than one fine should be imposed for the same delinquency.
The application of these tests can not be resisted on the ground that fines imposed under such'by-laws, must be regarded as conventional between the corporation and the member. The by-laws are adopted by a majority; and the legislature did not intend that the asse,nt of the minority, or of any member of the association, to the imposition of fines, should, in all cases, be conclusively presumed. The true intent was, that the power to assess unreasonable fines, or to assess for any other cause than the delinquency of a corporator, or twice for the same offense, should not exist in the corporation. ,
If these principles be applied to these associations, we think they may legitimately assess a fine against a member for delinquency in the payment of stated dues. The prompt payment of these dues is a duty which each member owes as a corporator, and in common with all the members. The success of the enterprise, in a large degree, *203 depends upon the prompt performance of this duty. Hence, a reasonable fine for default in making payment thereof, is within the power intended to be conferred. But a second fine for the non-payment of the same stated due, is a second punishment for the same offense. It is not a sufficient answer to the last proposition, to say that the non-payment of the same stated due, at a subsequent day, is a new offense. The obligation to pay, when the due first matured, was complete. No new obligation to pay it in the future is undertaken by the defaulting member; but the obligation or duty to pay it at maturity continues after default, until payment be made. Nor is it within the power of the corporation to assess and collect a fine for default in payment of interest upon loans advanced. If the loan be advanced to a member, he becomes bound to pay interest by his promise to do so; not’because he is a member of the association, but because he is a borrower, and as such, promises to pay interest on the loan. When money is thus advanced to a member, a new relation arises between him and the company — the relation of debtor and creditor; a relation not common to all the members, or even necessary as between corporation and corporator. It is in the relation of debtor to the corporation, and not as member of it, that he promises to pay interest, but it is only as a member of the corporation, and in relation to his conduct as such, that the power to impose a fine upon him exists. This proposition is made manifest, when we consider the fact, that loans are authorized to be made to depositors as well as members. When a depositor takes a loan, he thereby assumes exactly the same relation to the association' as does a member by taking a loan; and it is perfectly clear, that no fine can be assessed against a depositor for default in payment of interest on his loan.
These associations were first authorized by statute in this state in the year 1867; and in the brief period of their existence, they have grown to immense proportions both in number and in wealth. Already they embrace many thousands of members, and control millions of capital. If well *204 regulated and managed within legitimate bounds, they are no doubt agencies well adapted to promote the welfare of those for whose benefit they are professedly organized ; but when permitted to range wherever avarice and craft may lead them, they become instruments of oppression and fraud, like unto which there never has been a precedent in the history of this country. Hence, while they must be protected in all their rights, and in the lawful exercise of all their powers, it is very important that they also be denied powers which they do not possess, and restrained from abusing those they have.
5. When a building corporation- advances a loan to a member upon his stock, has it capacity to take from him mortgage security for the payment of such fines as may be lawfully assessed against him in the future ?
The statute of May 9, 1868, section 2, provides that it ■shall have power “to acquire, hold, incumber, and convey all such real estate and personal property as may be legitimately pledged to it on such loans, or may otherwise be transferred to it in the due course of its business.”
Before the loan is advanced, the stock of the member is a security in the hands of the company for the payment of fines. By making the loan, that security is lost; and we see no reason why the taking of mortgage security in such case, for the payment of future fines, should not be regarded as a transaction in the due course of its business. The power to assess and collect a fiue, reasonably implies a power to take security for its payment.
6. Can a building corporation enforce the collection of dues, interest on loans or fines, if the records of the corporation do not show, and it is not otherwise proved, that its by-laws were adopted by a formal vote of its members or directors?
We think it is not necessary to prove the adoption of bylaws by a formal vote of the members or directors. The adoption of by-laws is sufficiently proved by showing that they appear upon the records of the corporation, and have *205 been uniformly acted upon and enforced as the by-laws of the corporation.
7. Upon what basis should the account between mortgagee and mortgagor have been stated ?
The condition of defeasance contained in the several mortgages in these actions, was the punctual payment of the stated dues upon the stock on which the loan was advanced, the interest on the loan advanced, taxes and fire-insurance on the mortgaged premises, and all fines and" forfeitures, according to the constitution and by-laws of the mortgagee. In these cases there was no claim made on account of taxes or fire-insurance. It is quite clear that this condition was broken when default was made in the payment of stated dues, interest on loans advanced, and fines assessed, in accordance with proper by-laws — to wit, stated1 dues weekly, interest monthly, and fines when assessed.
It is also stipulated in the mortgages, that upon condition being broken, the whole amount of the par value of the shares of stock upon which each loan was advanced, should' become due, and the mortgage foreclosed.
In these cases, an account upon the basis of the par value-of the stock was not asked for; and it could not have been granted if it had been prayed for. Such a decree would-simply work a forfeiture to the association of the amount of the premium bid for the right of precedence in taking the loan, and would wholly deprive the borrower of all-benefit intended to be secured by it. Nor can the amount of the loan advanced be made the basis of the account.. The policy upon which these organizations are founded, does not contemplate that a loan advanced to a member upon his stock will ever be called in.
"Whenever the assets of the corporation become equal to the par value of all its stock, it ceases to exist, except for the purpose of winding up its affairs; and a member, who has received a loan on his stock, which; together with the - premium bid therefor, equals the par value of this stock, has no interest in the final distribution, unless there be a surplus of assets. The real transaction between the corpo *206 ration and such member is equivalent to the redemption of his stock in advance; saving, however, to the member his rights as a corporator, and to the corporation its rights to -collect from him the stated dues, interest on the loan advanced, and such fines as may be lawfully assessed against him. s, Such being the true relation of the parties, and such their reasonable expectations, a court of equity, upon breach of the condition of defeasance, by failure to pay stated dues, interest on loan advanced, or fines assessed, will not state an account on the basis of the loan advanced; but will ascertain the amount of dues, interest, and fines due .and unpaid, and will decree accordingly.
If it be objected that this mode of stating the account, where the parties have agreed upon a different basis, is judicial legislation, we answer, not so. It is simply a case, where a court of equity will not adopt the agreement of the parties as to a rule of. damages, where the agreed rule would make the recovery altogether disproportionate to the loss occasioned by the default, and would produce a result contrary to the evident design of the legislature in ■creating these building associations.
In each of these cases, the finding of the court below in favor of the mortgagee was for a sum greater than 'ivas then due. The record does not disclose the rule for accounting adopted in Hagerman’s case. In argument, we are told it was the rule adopted by the Superior Court of Cincinnati. 1 Cincinnati Superior Court Reporter, 477. The rule of that case was adopted in Mercer’s ease, as appears from the record. By that rule, the amount of stated ■dues and interest which may become due during the future existence of the corporation as estimated, is discounted and added to the amount of dues, interest, and fines for which the mortgagor is already in default. It will be observed, however, that the order made by the Superior Court of •Cincinnati, was upon distribution of the proceeds after sale. Whatever may be the true rale for distributing the proceeds •of a sale in such cases, it is quite clear that in stating an .account, as the basis for an order of sale, no sum. greater *207 than the amount actually due should be found. After the account is stated and a sale ordered, the mortgagor has a right to prevent a sale by the payment of the amount found to be due to the mortgagee. Hence, it is error to include in such finding anything more than the amount due at the time of decree.
8. It is sufficient to advertise notice of the time and place of a sale on execution for thirty days before the day of sale. In computing the time, the day of sale is excluded, but the day upon which advertisement was first made, may be included.
Section 597 of the code does not apply in such case. This is not a ease where an act is to be Aone within & certain time; the salé takes place after the time for advertising has expired. The time for advertising such sale is determined by the special provisions contained in section 436; and the time therein prescribed may be computed by counting the day on which the notice was first given.
If the notice of sale be given in a daily paper, as prescribed in section 436, it is not necessary that full five weeks, or thirty-five days, should transpire between the first publication and the day of sale. An insertion on the same day of the week, during five successive weeks, is sufficient, where the first insertion was thirty days before the day of sale.

Judgments reversed.

Welch, White, Rex, and Gilmore, JJ., concurred.